UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL COMMUNITY
REINVESTMENT COALITION,

                        Plaintiff,

              v.

ACCREDITED HOME LENDERS
HOLDING COMPANY, ACCREDITED
HOME LENDERS, INC., and ACCREDITED
MORTGAGE LOAN REIT TRUST,

                        Defendants.

Case No. 1:07-cv-01357-EGS

**DEFENDANTS' UNOPPOSED MOTION FOR LEAVE
TO FILE A RESPONSE TO PLAINTIFF'S SURREPLY**

      Defendants Accredited Home Lenders Holding Company, Accredited Home Lenders, Inc., and Accredited Mortgage Loan REIT Trust respectfully move for leave to file a response to Plaintiff National Community Reinvestment Coalition's Surreply in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Surreply"). Defendants consented to Plaintiff's Motion for Leave to File a Surreply "provided that Defendants be granted leave to file a sur-surreply in the event that Defendants deem it necessary." Pls.' Mot. for Leave to File a Surreply at 3. Defendants deem it necessary to respond to Plaintiff's Surreply.

      Plaintiff argues for the first time in its Surreply that Defendants' discussion of the Fair Housing Act's ("FHA") legislative history in their reply memorandum "constitutes a tacit admission" that legislative history is relevant to the interpretation of section 805 of the FHA. This is a gross mischaracterization of Defendants' position. Defendants maintain that the

statutory language of Section 805 is plain and that a review of legislative history is irrelevant to the interpretation of the statutes plain language. It is important that Defendants be given an opportunity to respond to Plaintiff's new argument and clarify their position.

Not surprisingly, Plaintiff continues its attempt to distract the Court from focusing on the plain language of the statutory text by renewing its misleading and highly selective recitation of the FHA's scant legislative history. Although Defendants' Reply Memorandum addressed the inaccuracies in Plaintiff's Opposition Memorandum, Plaintiff has introduced new inaccuracies made new mischaracterizations in its Surreply. Notwithstanding the irrelevance of the FHA's limited legislative history, Plaintiff has made its inaccurate and selective interpretation of the legislative history the foundation of its argument for ignoring the statutory text. It is therefore important that Defendants be given an opportunity to correct these inaccuracies and set the record straight. As Defendants will show in their response to Plaintiff's Surreply, what little legislative history exists is fully consistent with the plain language of the statute and fully supports Defendants arguments.

Pursuant to LCvR 7(m), counsel for Defendants has conferred with Plaintiff's counsel and determined that this motion is not opposed.

A copy of the response to Plaintiff's Surreply Defendants seek leave to file is attached hereto as Exhibit 1.

Respectfully submitted,

Date: January 10, 2008                     /s/
                                           Matthew P. Previn

                                           Matthew P. Previn (DC Bar No. 460228)
                                           Kirk D. Jensen (DC Bar No. 477629)
                                           BUCKLEY KOLAR LLP
                                           1250 24th Street, N.W., Suite 700
                                           Washington, DC 20037

                                                  202-349-8000 (telephone)
                                                  202-349-8080 (fax)

                                                  *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on January 10, 2008, a copy of the above and foregoing was electronically filed in this case and was duly served upon counsel of record by operation of the Court's ECF system

                    /s/
                 Matthew P. Previn

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL COMMUNITY REINVESTMENT COALITION,<br><br>                  Plaintiff,<br><br>    v.<br><br>ACCREDITED HOME LENDERS HOLDING COMPANY, ACCREDITED HOME LENDERS, INC., and ACCREDITED MORTGAGE LOAN REIT TRUST,<br><br>                  Defendants. | Case No. 1:07-cv-01357-EGS |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SURREPLY**

Plaintiff continues its efforts to distract this Court from focusing on the text of the FHA in light of the Supreme Court's recent decision in *Smith v. City of Jackson*, 544 U.S. 228 (2005). In its Surreply in Opposition to Defendants' Motion to Dismiss ("Surreply"), Plaintiff mischaracterizes Accredited Home Lenders, Inc.'s ("Accredited") position regarding the relevance of the Fair Housing Act's ("FHA") scant legislative history. Plaintiff also mischaracterizes (or misunderstands) Accredited's discussion of the FHA's limited legislative history. Contrary to Plaintiff's assertions in its Surreply, the FHA's legislative history is fully consistent with the plain language of the statutory text.

**I.    LEGISLATIVE HISTORY IS IRRELEVANT TO INTERPRETING THE FHA.**

Plaintiff's assertion that Accredited's discussion of the FHA's meager legislative history "constitutes a tacit admission" that the legislative history is relevant is a gross

mischaracterization of Accredited's position. Surreply at 2. It is surprising that Plaintiff would make such an assertion, given Accredited's express statement that legislative history is "irrelevant to the interpretation of the FHA." Defs.' Reply at 19-20.

The FHA's scant legislative history is irrelevant because the statutory language is clear. *See* Defs.' Reply at 19-20. As Accredited has shown in detail, a statute permits disparate impact claims only if it contains the "effects" language similar to Title VII and the Age Discrimination in Employment Act. *See* Defs.' Mot. to Dismiss at 27-33 & Exs. A-B; Defs.' Reply at 16-19. The FHA contains no such language.[1]

Instead of the "effects" language that would permit disparate impact claims, the FHA makes it unlawful "to **discriminate** against any person . . . because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a) (emphasis added). "Discriminate" necessarily implies intent to discriminate. *See, e.g.*, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 ("'Discrimination' is a term that covers a wide range of **intentional** unequal treatment." (emphasis added)).[2] In contrast, and as Plaintiff's counsel has written elsewhere, a defendant can be liable under a disparate impact theory even for actions intended to

---

[1] Plaintiff's suggestion that "the principal textual basis for the FHA's application to disparate impact claims is the 'any person,' 'because of race,' and 'based on race' language in 42 §§ 3604 and 3605," Pl.'s Surreply at 11, is flatly inconsistent with the Supreme Court's holding in *Smith*. *See Smith*, 544 U.S. at 235-36 & n.6; *id.* at 250 (O'Connor, J., dissenting); *accord Garcia v. Johanns*, 444 F.3d 625, 633 n.9 (D.C. Cir. 2006). There can be no question after *Smith* that the principal textual basis for disparate impact claims is the "effects" language contained in Title VII and the ADEA. *See* Defs.' Reply at 16-19.

[2] As Accredited noted in its Reply, several commentators have noted that disparate impact claims do not punish actions motivated by discrimination but rather further notions of distributive justice. Defs.' Reply at 28 n.27. Whether legislation should target only actions motivated by discrimination, or whether legislation should further notions of distributive justice, is a decision that must be left to Congress. In enacting the FHA, Congress decided the former, not the latter.

2

*prevent* discrimination. *See* 1 JOHN P. RELMAN, HOUSING DISCRIMINATION PRACTICE MANUAL § 2:24 (2005) ("A defendant with the best intentions—indeed, even a defendant who undertakes a particular policy in the express hope of eliminating any possible discrimination—can still be held liable if plaintiff pursues a disparate impact claim."). It is inconceivable that Congress could have intended "discriminate" to extend so far. Where, as here, the statutory language is clear, the legislative history is simply irrelevant. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001); *W.Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98-99 (1991).[3]

## II.   PLAINTIFF MISCHARACTERIZES THE FHA'S LEGISLATIVE HISTORY.

### A.   Plaintiff Mischaracterizes the Evolution of the FHA.

Even if the scant legislative history were relevant to the interpretation of the FHA—and it is not—Plaintiff has mischaracterized (or misunderstood) the legislative history and Accredited's discussion of that limited legislative history.

Plaintiff mischaracterizes the evolution of the FHA. As Accredited discussed in its Reply brief, § 408 of the Civil Rights Act of 1966 (a fair housing bill that ultimately was defeated) would have permitted a prima facie case of housing discrimination to be made solely on the basis of results, without a showing of discriminatory intent. Defs.' Reply at 24-25. Plaintiff is incorrect when it suggests otherwise. The provision that created the Fair Housing Board would

---

[3]   Even if the statutory text were not clear, the statements of individual legislators are insufficient to show congressional intent. The statutory text "cannot be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process." *Casey*, 499 U.S. at 98-99. Even if Plaintiff's discussion of the legislative history were correct (and it is not), Plaintiff's reliance on a few isolated statements by individual legislators is misplaced. As Accredited discusses in its Reply, what little legislative history exists is limited to statements of individual legislators—and this is insufficient to shed light on congressional intent. *See* Defs.' Reply at 21-22 & n.17.

have permitted the imposition of liability based on results only. Congressman Whitener made this clear:

> Title IV, as has been said, leaves more questions unanswered than it answers.
>
> A provision was added in the committee about a fair housing board. At the time that seemed rather innocuous. As we look at it a little further it becomes objectionable. For example, it provides that we will use the NLRB procedure.
>
> We know that under the NLRB if a man is fired from a job and he was engaged in union activity, proof of these two facts establishes a prima facie case, and thereby shifts to the employer the burden of showing that the employer was not engaged in an unfair labor practice.
>
> I assume, if that is the procedure followed, this new fair housing board, as it is called, if a house were up for sale and a member of a minority group sought to purchase that house and that effort to buy the house were fruitless, then a prima facie case would be established and the burden would shift to the owner to show that he had not discriminated.
>
> In the testimony before the Senate committee the Attorney General of the United States agreed that would be the situation under the state of facts I have just mentioned.[4]

In the Senate debates, this concern with a prima facie case being made on effects alone, in the context of the NLRB analogy, was raised by Senator Long, one of the principal opponents of the 1966 bill:

> A fourth reason for opposing the open housing section of the bill is that it would very likely result in the imposition of an unreasonable practical burden upon property owners—over and above the deprivation of basic property rights.
>
> Prof. Sylvester Petro of the New York University School of Law, who testified before the Senate Subcommittee on Constitutional Rights, made some very interesting and appropriate comments on

---

[4]   112 Cong. Rec. 17196 (1966).

4

> this aspect of the Senate bill. I should like to quote some of his remarks:
>
> \*   \*   \*
>
> > [Petro] As we shall see, it is likely that the burden of proof will come to rest swiftly upon the homeowner, rather than, as is traditional, at least in due process countries, upon the complaining party.
> >
> > And what will happen at the trial? The law is vague, forbids refusing to sell to any person because of race, color, religion, or national origin. How much proof is required? On whom will the burden of proof come ultimately to rest? We have considerable experience with a similarly vague law. An analogous provision in the National Labor Relations Act prohibits discrimination by employers which tends to discourage union membership. The National Labor Relations Board considers itself as having a prima facie case of discrimination when a union man is discharged by an employer who has betrayed an antiunion sentiment. At that point the burden of proof shifts to the employer. He must show there was some good reason for the discharge—
>
> \*   \*   \*
>
> > The burden of proving lack of discrimination will fall upon the homeowner. . . .
>
> \*   \*   \*
>
> [Senator Long] Mr. President, I feel that Mr. Petro's logic is unimpeachable. He has made it plain that this bill would impose a very serious and unwarranted burden upon those to whom its provisions would apply. The imposition of this burden is indeed a compelling argument for rejecting so-called fair housing.[5]

As Accredited notes in its Reply brief, § 408 was a central reason for the bill's failure. *See* Defs.' Reply at 24-25. When fair housing legislation was reintroduced in 1968—the bill that eventually would become the FHA—this provision had been removed. *See id.* at 25. Thus,

---

[5] 112 Cong. Rec. 22313-14 (1966).

5

Congress rejected the provision that would have permitted prima facie cases to be established based on effects and would then have required the defendant to establish a legitimate purpose for its action.

Plaintiff attempts in vain to explain away this history by arguing that it is procedural, not substantive, and related only to claims of intentional discrimination. *See* Pl.'s Surreply at 3-6. Plaintiff's argument misses the point. As the statements above and cited in Accredited's Reply show, the opponents of the 1966 bill objected to the bill because it would have permitted plaintiffs to establish a prima facie case based solely on effects—without a showing of intent— and would then have required the defendant to show that it had not discriminated by showing that it had a legitimate purpose for its actions. If Congress was unwilling to allow a plaintiff to state a prima facie case based solely on effects in cases alleging intentional discrimination, it is inconceivable that Congress would have intended to allow such a prima facie case to be established based solely on effects when the defendant's action or policy was facially neutral.

### B.  Plaintiff Further Mischaracterizes the Baker Amendment.

While Plaintiff addressed (and mischaracterized) the Baker amendment in its Opposition Memorandum, *see* Opp'n Mem. at 32-33, it attempts to do so again in its Surreply. *See* Pl.'s Surreply at 10 n.9. As Accredited discusses in its Reply, the Baker amendment had nothing to do with whether disparate impact claims are cognizable under the FHA. *See* Defs.' Reply at 26-27. As one commentator has explained: "[T]he Senate rejected the amendment because it believed a plaintiff would encounter great difficulty proving the existence of discriminatory instruction, not because it believed plaintiff should not have to establish defendant's racial motivation." Marshall D. Stein, *The Fair Housing Act of 1968 and the Civil Rights Act of 1866: The Test for Liability in Housing Discrimination Cases*, *in* ISSUES IN HOUSING DISCRIMINATION:

6

A CONSULTATION/HEARING OF THE UNITED STATES COMMISSION ON CIVIL RIGHTS 94, 101 (1985) (internal quotation and citation omitted).  "Thus, Senate rejection of the Baker amendment does not indicate congressional rejection of discriminatory intent as a condition of Title VIII relief. . . .  [T]he defeat of the Baker amendment did not resurrect the shifting burden of proof argument that Senators Mondale and Brooke went to such lengths to bury in the 1968 bill." *Id.*

### III.    CONCLUSION

For the reasons in their principal motion, their Reply brief, and those discussed above, Defendants request that Plaintiff's Complaint, or, in the alternative, portions of Plaintiff's Complaint, be dismissed.