UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL COMMUNITY REINVESTMENT COALITION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 07-1357(EGS) |
| v. | ) ) | |
| ACCREDITED HOME LENDERS HOLDING COMPANY, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff National Community Reinvestment Coalition ("NCRC") brings this action against defendants Accredited Home Lenders Holding Company ("Accredited Holding"), Accredited Home Lenders, Inc. ("Accredited, Inc."), and Accredited Mortgage Loan REIT Trust ("Accredited REIT") (all defendants, collectively, unless otherwise noted, "Accredited" or "defendants"), alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631. Specifically, NCRC argues that Accredited's lending policies discriminate against African Americans and Latinos in several major metropolitan areas across the country.

Pending before the Court is defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Defendants make four arguments: (1) this Court does not have personal jurisdiction over Accredited Holding and Accredited REIT; (2) plaintiff lacks

1

standing; (3) plaintiff fails to state a claim upon which relief can be granted under Section 804 of the FHA; and (4) that the FHA does not permit claims for discrimination under a disparate impact theory or alternately, even if the FHA permits disparate impact claims, NCRC fails to state a cognizable disparate impact claim.  Defs.' Mot. to Dismiss at 1.  Upon consideration of the motion, the response and reply thereto, supplemental memoranda, and the applicable law, the motion to dismiss is **DENIED**.

**I.   Background**

NCRC is a national non-profit organization with a mission to increase fair and equal access to credit, capital and banking services and products for all Americans, regardless of race. Complaint ("Compl.") ¶ 2.  NCRC's members include community development corporations, civil rights groups, community reinvestment advocates, local and state government agencies, and churches.  Compl. ¶ 12.  Among other things, NCRC works to increase the flow of private capital into underserved communities.  Compl. ¶ 2, 12.

On July 25, 2007, Plaintiff filed a complaint for Declaratory and Injunctive Relief against Accredited alleging a pattern and practice of discrimination against African-American and Latino homeowners, and against homeowners and prospective homeowners in African-American and Latino neighborhoods.  Compl. ¶ 4.  NCRC alleges that this pattern and practice results from

2

Accredited's policies to determine whether a prospective borrower is eligible for a mortgage loan. Compl. ¶ 4.

According to the allegations in the complaint, defendant Accredited Holding is a public company that originated over $16 billion in residential mortgage loans in 2005, either directly or through its subsidiaries. Compl. ¶ 13. Plaintiff maintains that Accredited Holding originates some loans in the District of Columbia. Compl. ¶ 13. Defendant Accredited, Inc. is a nationwide mortgage banking company and wholly-owned subsidiary of Accredited Holding. Compl. ¶ 14. Accredited, Inc. is a subprime lender. Compl. ¶ 14. Defendant Accredited REIT Trust is a wholly-owned subsidiary of Accredited, Inc. Compl. ¶ 16. Accredited REIT acquires, holds, manages and services the mortgage assets of Accredited, Inc. throughout the United States, including in the District of Columbia. Compl. ¶ 16.

**II.  Discussion**

**A.  Standard of Review**

Pursuant to Federal Rule of Civil Procedure 8(a), a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to provide to the defendant "fair notice of the claims against him." *Ciralsky v. CIA*, 355 F. 3d 661, 668-70 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 8(a)). *See also Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (per curiam).

"[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).  In considering a 12(b)(6) motion, the Court should construe the complaint "liberally in the plaintiff's favor," "accept[ing] as true all of the factual allegations" alleged in the complaint. *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008) (citing *Kassem v. Washington Hosp. Ctr.*, 513 F. 3d. 251, 253 (D.C. Cir. 2008)). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

**B.    Personal Jurisdiction over Accredited Holding and Accredited REIT**

Defendants maintain that neither Accredited Holding nor Accredited REIT are organized in the District of Columbia and thus are nonresident defendants.  Defs.' Mot. to Dismiss at 3. They argue that the Court cannot exercise personal jurisdiction over these two defendants unless first, the District of Columbia's long-arm statute provides jurisdiction and, second, the Court finds jurisdiction would satisfy the constitutional requirements of the Due Process Clause.  Defs.' Mot. to Dismiss

4

at 4 (citing *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).  Defendants argue that NCRC has not alleged specific facts on which the court can find personal jurisdiction.  Defs.' Mot. to Dismiss at 4 (citing *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003)).

Plaintiff has submitted Accredited's SEC filings in support of its claims that Accredited Holding and Accredited REIT have "engaged in substantial lending-related transactions in the District of Columbia which give rise to the Complaint."  Pl.'s Mem. in Opp'n at 8.  Plaintiff further alleges that these two defendants are alter egos of defendant Accredited, Inc., who does not contest personal jurisdiction.  Pl.'s Mem. in Opp'n at 8.

While the plaintiff has the burden of establishing the factual basis for personal jurisdiction, "[i]n determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456, 282 U.S. App. D.C. 295, 297 (D.C. Cir. 1990) (citing *Reuber v. United States,* 750 F.2d 1039, 1052 (D.C. Cir. 1984)).  "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."  *El-Fadl v. Central Bank of Jordan*, 75

5

F.3d 668, 676, 316 U.S. App. D.C. 86, 94 (D.C. Cir. 1996). *See also GTE New Media Servs. Inc.*, 199 F.3d at 1351-52; *Caribbean Broad. Sys., Ltd. V. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998); *Edmonds v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991); *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987); *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d. 1, 15 (D.D.C. 2003) ("The Circuit's standard for permitting jurisdictional discovery is quite liberal").

NCRC has alleged sufficient facts at this stage of the proceedings. Accordingly, the Court **DENIES** without prejudice the defendants' motion to dismiss the plaintiff's complaint against Accredited Holding and Accredited REIT for lack of personal jurisdiction.

**C.    Standing**

Defendants contend that NCRC does not have standing to pursue these claims as an organization. Defs.' Mot. to Dismiss at 11. They argue that "the alleged frustration of [plaintiff's] mission alone is not an injury capable of justifying standing." Defs.' Mot. to Dismiss at 13. Plaintiff alleges an injury in that defendants' policies have "frustrated its mission by causing it to devote scarce resources to education and outreach programs to counteract these policies." Pl.'s Mem. in Opp'n at 13-14.

The Supreme Court has held that standing to bring a FHA claim is coextensive with constitutional standing. *Havens Realty*

6

*Corp. v. Coleman,* 455 U.S. 363, 372 (1982) (citing *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 103 n. 9 (1979)). Pursuant to Article III, a plaintiff must allege an "injury in fact" that is concrete and particularized, and actual or imminent. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). The injury must be fairly traceable to the challenged conduct of the defendants and it must be likely that the injury will be "redressed by a favorable judicial decision." *Id.* An organization may assert an injury in fact that arises from a drain on the organization's resources caused by the defendants' conduct (and the ensuing litigation), if the conduct results in an impairment of the organization's work and constitutes "far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp.,* 455 U.S. at 378-79. While the D.C. Circuit has suggested that money spent on "testing" is, by itself, insufficient to establish standing because such harm is "self-inflicted," *Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.,* 28 F.3d 1268, 1276-77 (D.C. Cir. 1994), the Circuit also suggested that, if the defendants' conduct caused independent harms to other programs of plaintiff organizations, sufficient injury would exist. *Id.* Accord *National Fair Housing Alliance, Inc. v. Prudential Ins. Co. of America*, 208 F. Supp. 2d 46, 52 (D.D.C. 2002).

The complaint claims that Accredited's alleged discriminatory lending policies and practices have caused injury by requiring "NCRC to engage in an education and outreach campaign, and to develop educational materials to identify and counteract the unlawful actions of Accredited, thus diverting the NCRC's resources from other testing, education, counseling, and capacity-building services." Compl. ¶ 67. NCRC states that defendants' policies and practices "have also frustrated the NCRC's mission and purpose of increasing fair and equal access to credit, capital, and banking services and products for all Americans, regardless of race and ethnicity." Compl. ¶ 67.

The D.C. Circuit, in assessing an organization's standing to sue under the Fair Housing Act, remarked that the issue of standing is "answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases." *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 29 (1990) (quoting *Allen v. Wright,* 468 U.S. 737, 751-52, 104 S.Ct. 3315, 82 L. Ed. 2d 556 (1984)). In *Havens Realty,* HOME Richmond, one of the organizational plaintiffs in that case, alleged that defendants' racial steering practices had frustrated its efforts to assist in providing equal access to housing through counseling and referral services. 455 U.S. at 379. HOME Richmond also claimed that the defendants' conduct caused it to "devote significant resources to identify and counteract" the allegedly discriminatory steering

8

practices. *Id.* In finding that these allegations, if true, left "no question" that the organization had suffered an injury in fact sufficient for standing purposes, the Supreme Court noted that the defendants' conduct had allegedly caused a "drain on the organization's resources-constitut[ing] far more than simply a setback to the organization's abstract social interests." *Id. Accord National Fair Housing Alliance, Inc.*, 208 F. Supp. 2d at 53.

As in *Havens Realty*, the plaintiff's statement they have expended resources on counteracting defendants' policies are sufficient to state an injury in fact caused by defendant's conduct. Like *National Fair Housing Alliance, Inc.*, 208 F. Supp. 2d at 54, "Plaintiffs' injury lies in their expenditure of scarce resources on identifying and counteracting discrimination." Accordingly, the Court **DENIES** defendants' motion to dismiss as to standing.

**D.   Fair Housing Act Claims**

**1.   Claims under Section 804 of the Fair Housing Act, 42 U.S.C. § 3604**

NCRC alleges that the defendants have violated 42 U.S.C. §§ 3604(a), 3604(b), and 3605 of the FHA. Section 3604, otherwise known as Section 804, makes it unlawful:

> (a) To refuse to sell or rent after the making of a
> bona fide offer, or to refuse to negotiate for the sale
> or rental of or otherwise make unavailable or deny, a

>    dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
>    (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
>
>    (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604.  Section 3605 makes it unlawful:

>    (a) [T]o discriminate in making available ... a [residential real estate-related] transaction, or in the terms and conditions of such a transaction, because of race, color, religion, sex, familial status, or national origin.
>
>    (b) [T]he term "residential real estate-related transaction" means any of the following:
>
>    (1) The making or purchasing of loans or providing other financial assistance – (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling ...

42 U.S.C. § 3605.  Plaintiff contends that these provisions of the FHA are properly construed to prohibit racial discrimination in mortgage lending.

Defendants assert that NCRC's claims are "based solely on Accredited's alleged lending practices, and because Plaintiff does not allege that Accredited's actions affected the availability of housing in any way, Plaintiff has failed to state

a claim under Section 804." Defs.' Mot. to Dismiss at 19. Defendants argue that "Section 804 applies only to discrimination in the *sale or rental* of housing and the availability of housing, not to the financing of housing," whereas Section 805 of the FHA applies only to mortgage lending. Defs.' Mot. to Dismiss at 21 (emphasis in original). They contend that an interpretation that Section 804 also applies to mortgage lending would render Section 805 "superfluous and altogether redundant." Defs.' Mot. to Dismiss at 22.

This Court considered this argument in *National Community Reinvestment Coalition v. Novastar Financial, Inc.*, No. 07-0861, 2008 WL 977351 (D.D.C. Mar. 31, 2008). In that case, Judge Lamberth ruled that the same argument made by the defendants here, "ignores the broad language in § 3604 which goes beyond mere refusal to sell or rent by also banning practices that '*otherwise make unavailable or deny*' housing." *Id*. at *2. Judge Lamberth noted that this Court had previously stated that "the broad, general language reflected in phrases such as 'otherwise make unavailable or deny' was intended to be flexible enough to cover multiple types of housing-related transactions." *Id*. at *2 (quoting *Nat'l Fair Housing Alliance*, 208 F. Supp. 2d at 56). The Court further stated that a less restrictive interpretation of § 3604 is consistent with the broad purpose of the FHA, which is to "promote integrated housing patterns and to discourage

11

discrimination in *access* to housing." *Id*. at *2 (quoting *Nat'l Fair Housing Alliance*, 208 F. Supp. 2d at 57 (internal citations omitted)) (emphasis added).

Furthermore, the Court stated that the defendants' suggested interpretation of § 3604 "is entirely inconsistent with precedent from this Circuit."  *Id*. at *2 (citing *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.,* 929 F.2d 714, 719-20 (D.C. Cir. 1991) (in dicta listing "mortgage financing" as an "essential service" within the coverage of § 3604(a)); *Nat'l Fair Housing Alliance,* 208 F. Supp. 2d at 57 (finding that § 3604 applies to insurance redlining); *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 20 (D.D.C. 2000) (holding that predatory lending practices violate §§ 3604(a) and (b) because those practices make housing unavailable by putting borrowers at risk of losing their property); *Wai v. Allstate Ins. Co.,* 75 F. Supp. 2d 1, 7 (D.D.C 1999) (finding that  3604 applies to insurance redlining; *Jones v. Office of the Comptroller of the Currency,* 983 F. Supp. 197, 202 (D.D.C. 1997) (acknowledging that § 3604 applies to "actor[s] directly involved in providing housing or providing services, like homeowner's insurance *or* financing, that are directly connected to helping people acquire housing")).

In accord with Judge Lamberth's reasoning, this Court determines that the plaintiff has stated a claim under Section

804 of the FHA. Accordingly, the Court **DENIES** defendants' motion to dismiss as to the Section 804 claims.

**2.   Disparate Impact Theory under the Fair Housing Act**

Defendants argue that disparate impact claims are not cognizable under the Fair Housing Act. Defs.' Mot. to Dismiss at 27. Further, they argue that even if the FHA permits such claims, NCRC fails to state a cognizable disparate impact claim. Defs.' Mot. to Dismiss at 27.

**a.   Availability of Disparate Impact Claims under the FHA**

This Court has previously held that the FHA permits disparate impact claims. *See Nat'l Fair Housing Alliance, Inc.*, 208 F. Supp. 2d at 58-60. Nonetheless, Defendants contend that the Supreme Court's decision in *Smith v. City of Jackson*, 544 U.S. 228 (2005) dictates that these claims must be dismissed. Defs.' Mot. to Dismiss at 27. Defendants argue that in *Smith* the Court focused on the plain language of the statutory text in construing anti-discrimination statutes. Defs.' Mot. to Dismiss at 28 (citing *Smith*, 544 U.S. at 234-35). Defendants maintain that the language of Section 805 of the FHA "mirrors" that of Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 ("Title VII") and Section 4(a)(1) of the Age Discrimination in Employment Act ("ADEA"), "which permit disparate treatment claims but not disparate impact claims." Defs.' Mot. to Dismiss at 30 (citing Title VII, § 703(a)(1), 42 U.S.C. 2000e-2(a)(1); ADEA §

13

4(a)(1), 29 U.S.C. 629(a)(1)). They argue that the absence of an "effects" provision comparable to provisions in Title VII § 703(a)(2) and ADEA § 4(a)(2) demonstrates that the FHA does not permit disparate impact claims. Defs.' Mot. to Dismiss (citations omitted). Accredited asserts that *Smith* further casts doubt on the lower court jurisprudence permitting disparate impact claims under the FHA because the cases relied on by the Court in *Nat'l Fair Housing Alliance, Inc.* derived from cases which have since been questioned by the *Smith* holding. Defs.' Mot. to Dismiss at 33-38.

NCRC argues that the legislative history of the FHA demonstrates Congress's intent that the FHA includes disparate impact claims. Pl.'s Mem. in Opp'n at 31 (citing *Nat'l Fair Housing Alliance, Inc.*, 208 F. Supp. 2d at 59 n.7; 114 Cong. Rec. 2526 (1968)). Plaintiff notes that, in passing the Fair Housing Amendments Act of 1988, Congress endorsed the application of the FHA to disparate impact claims. Pl.'s Mem. in Opp'n at 37-39 (citations omitted).

NCRC further argues that the text of the FHA is more similar to the section of the ADEA that *Smith* did find to apply to disparate impact claims than the portions cited by the defendants. Pl.'s Mem. in Opp'n at 40-41. Moreover, they note that the administrative agencies charged with implementing the FHA have "embraced" the use of disparate impact analysis. Pl.'s

14

Mem. in Opp'n at 41-42 (citing *Pfaff*, 88 F.3d at 745; *Mountain Side*, 56 F.3d at 1250.)  Plaintiff argues that *Chevron* deference should apply to this agency interpretation and, even if it does not, *Skidmore* deference would apply based on HUD's "specialized experience" and "the value of uniformity."  Pl.'s Mem. in Opp'n at 42-43 (citing *U.S. v. Mead Corp.*, 533 U.S. 218, 234-35, 121 S.Ct. 2164, 2175-76 (2001)); *Skidmore v. Swift & Co.*, 323 U.S. 134, 139, 140 (1944) (stating rulings of Administrator not conclusive but entitled to respect as they determine policy and guide enforcement and such deference serves the interest of uniformity).

   Furthermore, NCRC notes that all eleven of the United States Circuit Courts of Appeals to consider the issue have found that the FHA does provide for a disparate impact cause of action. Pl.'s Mem. in Opp'n at 33.  *See, e.g.*, *Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49 (1st Cir. 2000); *Pfaff v. HUD*, 88 F.3d 739, 745-46 (9th Cir. 1996); *Mountain Side Mobile Estates P'ship v. Sec'y of HUD*, 56 F.3d 1243, 1250-52 (10th Cir. 1995) ("*Mountain Side*"); *Jackson v. Okaloosa County*, 21 F.3d 1531, 1543 (11th Cir. 1994); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934-35 (2d Cir. 1988), *aff'd per curiam*, 488 U.S. 15 (1988); *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir.1986); *Arthur v. City of Toledo*, 782 F.2d 565, 574-75 (6th Cir. 1986); *Smith v. Town of Clarkton*, 682 F.2d 1055, 1065 (4th

Cir. 1982); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 146-48 (3d Cir. 1977); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1288-90 (7th Cir. 1977); *Williams v. Matthews Co.*, 499 F.2d 819, 826 (8th Cir. 1974).  In describing this "overwhelming precedent," *see Nat'l Fair Housing Alliance, Inc.*, 208 F.Supp.2d at 59, NCRC states that the Circuit Court's analyses are "grounded on Supreme Court rules of FHA construction, legislative history, purpose, analogy to Title VII, issues of proof, and the Act's text" and "are multifaceted and consistent."  Pl.'s Mem. in Opp'n at 37.

Finally, plaintiff contends that the Court's reasoning in *Nat'l Fair Housing Alliance, Inc.* and the holdings of the Circuit Courts are not undermined by *Smith* because the courts rest their holdings on many foundations and because *Smith* "reinforces the analytical approach taken by the Circuit Courts."  Pl.'s Mem. in Opp'n at 44.  NCRC cites four decisions, *Payares v. JP Morgan Chase & Co.*, 2008 WL 2485592, *1 (C.D. Cal. June 17, 2008); *Ramirez v. GreenPoint Mortg. Funding, Inc.*, WL 2051018, at*3-4 (N.D. Cal. May 13, 2008); *Zamudio v. HSBC North America Holdings Inc.*, 2008 WL 517138, *2 (N.D. Ill. Feb. 20, 2008); and *Garcia v. Country Wide Fin. Corp.*, No. 07-1161, slip. op. (C.D. Cal. Jan. 17, 2008), which have explicitly held that *Smith* does not overturn earlier precedent recognizing disparate impact claims under the FHA.  Pl.'s Notice of Supplemental Authority (Apr. 22,

2008); Pl.'s Notice of Supplemental Authority (July 11, 2008). Plaintiff also notes that in other decisions entered post-*Smith*, courts have held, albeit without referencing *Smith* explicitly, that the FHA applies to disparate impact claims. Pl.'s Mem. in Opp'n at 50 (citing *Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007); *Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1194 (9th Cir. 2006); *Hallmark Developers, Inc. v. Fulton County*, 466 F.3d 1276, 1286 (11th Cir. 2006); *Cox v. City of Dallas*, 430 F.3d 734, 746 (5th Cir. 2005); *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 740-41 (8th Cir. 2005); *Darst-Webbe Tenant Ass'n v. St. Louis Hous. Auth.*, 417 F.3d 898, 902 (8th Cir. 2005)).

For the reasons set forth above and substantially for the reasons articulated in these cases, the Court finds that *Smith* does not preclude disparate impact claims pursuant to the FHA.

**b.  Failure to State a Disparate Impact Claim**

Finally, defendants argue that, even if these claims are cognizable under the FHA, NCRC has failed to state a cognizable disparate impact claim because they have not shown "that the unfavorable consequences are borne disproportionately by members of the class in comparison to non-members who are similarly situated." Defs.' Mot. to Dismiss at 38 (internal citations omitted). Accredited contends that the plaintiff inappropriately narrows the affected group and thus fails to allege facts

17

regarding the total impact of defendants' lending policies. Defs.' Mot. to Dismiss at 40. Accredited also argues that NCRC fails to compare the affected group to the total group to which the policy applied. Defs.' Mot. to Dismiss at 40-41. Thus, Accredited argues that NCRC has not met the pleading standard for their claims.

NCRC responds that it has met the limited pleading requirements for discrimination claims set forth in *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000) and confirmed in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). The Court held in *Swierkiewicz* that:

> This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.... Consequently, the ordinary rules for assessing the sufficiency of a complaint apply. See, *e.g.*, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

*Swierkiewicz*, 534 U.S. at 511.  *Accord Fame Jeans Inc.*, 525 F.3d at 16 (citing *Twombly*, 127 S.Ct. at 1964).

Following this authority, the Court finds that the plaintiff has sufficiently stated a claim of disparate impact under the

18

FHA.  Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiff's claim of disparate impact under the FHA.

### III. Conclusion

For the foregoing reasons, and upon careful consideration of defendants' motion to dismiss, the response and reply thereto, supplemental authority and responses, and the applicable statutory and case law, the defendants' motion to dismiss shall be **DENIED**.  An appropriate order accompanies this memorandum opinion.

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            August 28, 2008**